United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SULAIMAN ABUDULA,
Plaintiff,

v.

KRISTI NOEM, et al.,
Defendants.

Case No. 25-cv-01391-WHO

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 20, 23

Plaintiff Sulaiman Abudula ("Abudula") filed an asylum application with the United States Department of Citizenship and Immigration Services ("USCIS") on May 26, 2023. On February 10, 2025, Abudula filed this action against defendants USCIS, the United States Department of Homeland Security ("DHS") and three individuals—Kristi Noem ("Noem"), Jennifer B. Higgins ("Higgins"), and Danielle E. Lehman ("Lehman")—in their official capacities. Abudula argues adjudication of his asylum application has been unreasonably delayed and he seeks an order compelling USCIS to reschedule his interview and adjudicate his asylum application. To date, Abudula's application has not been adjudicated. USCIS scheduled an asylum interview for Abudula for June 12, 2025, but a few days before USCIS cancelled the interview without explanation. USCIS has not rescheduled the interview.

Because Abudula has only waited two years since filing his application and now is in the first priority category for asylum interviews, USCIS's delay in adjudication is not unreasonable. Defendants' motion for summary judgment is GRANTED and plaintiff's motion is DENIED.

## BACKGROUND

### I. ASYLUM APPLICATION GENERALLY

Under the Immigration and Nationality Act ("INA"), "Any alien who is physically present

in the United States or who arrives in the United States . . . , irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title." 8 U.S.C. § 1158(a)(1). The INA gives the Attorney General (and the Secretary of Homeland Security) the discretion to establish procedures for considering asylum applications. 8 U.S.C. § 1158(d)(1). The INA, however, provides guidelines and rules for adjudicating asylum applications. *See* 8 U.S.C. § 1158(d)(5)(A). For example, "in the absence of exceptional circumstances," asylum interviews shall be held within 45 days of an application's filing, and the application shall be fully adjudicated within 180 days of filing. 8 U.S.C. § 1158(d)(5)(A)(ii)–(iii). Further, the INA expressly prohibits private substantive or procedural rights of action. 8 U.S.C. § 1158(d)(7).

Prior to 1995, as a standard practice, the Immigration and Naturalization Service ("INS") issued employment authorization to nonfrivolous applicants whose asylum applications were not adjudicated in 90 days. Declaration of Brett H. Lassen, Dkt. No. 23-1 ¶ 10. Because most applications were not adjudicated in 90 days, INS began mailing employment authorization documents ("EAD") to applicants upon receipt of their applications. *Id.* To discourage frivolous asylum applications solely to obtain an EAD, in 1995, the INS instituted regulatory reforms in response to statutory amendments that extended the waiting period for an EAD to 180 days. *Id.* ¶ 11. This regulatory scheme remains in place today. *Id.*

In 2018, USCIS returned to the Last-In-First-Out ("LIFO") scheduling method (previously used in the 1990s) to prioritize asylum interviews. Lassen Decl. ¶ 24. Under the LIFO scheduling priorities, first priority goes to "applications that were scheduled for an interview, but the interview had to be rescheduled at the applicant's request or the needs of USCIS." Lassen Decl. ¶ 25; Declaration of Elizabeth D. Kurlan, Dkt. No. 23-3 ¶¶ 2–3. By the end of the second quarter of 2025, USCIS has a backlog of 1,547,092 pending asylum applications. Lassen Decl. ¶ 13, Chart 2.

## II. ABUDULA'S ASYLUM APPLICATION

On May 26, 2023, Abudula filed an asylum application with USCIS. Compl., Dkt. No. 1 ¶ 2; Declaration of Trent Goulding, Dkt. No. 20-1 ¶ 2; Declaration of Danielle Lehman, Dkt. No.



United States District Court
Northern District of California

23-2 ¶ 13. Abudula filed this petition on February 10, 2025, alleging defendants are in violation of both "the Administrative Procedures Act and Mandamus Act, 5 USC §701 et seq." as they "are unlawfully withholding or unreasonably delaying action on Plaintiff Sulaiman Abudula's I-589 application and have failed to carry out the adjudicative functions delegated to them by law with regard to Plaintiff's case." Compl. ¶¶ 1, 14. Abudula seeks to join the United States Navy and is approaching the age limit for enlistment as a candidate for the Navy SEAL program. *Id.* ¶ 11. In light of his age and interest in serving in the Navy, plaintiff requested an "expedited interview," without success. *Id*. Abudula relies on his interest in serving in the Navy as a reason why his asylum application is particularly time sensitive. *See* Compl., Ex. 2; *see also* Goulding Decl. ¶ 3 & Ex. B (Navy recruiters have informed Abudula that he needs a green card before he can enlist).

On March 18, 2025, Abudula received notice that USCIS scheduled his asylum interview for June 12, 2025, in San Francisco. Goulding Decl. ¶ 4 & Ex. C; Lehman Decl. ¶ 17. On April 16, 2025, the parties stipulated to stay this case because of the scheduled interview. Dkt. No. 15. However, the San Francisco Asylum Office cancelled the interview a few days before June 12, 2025. Goulding Decl. ¶ 7; Lehman Decl. ¶ 17.[1] Defendants contend that USCIS "erroneously scheduled" Abudula's interview, believing the "case was ready to be scheduled for an interview, but it was not." Lehman Decl. ¶¶ 16–17. Defendants claim this error was simply an "unfortunate mistake." Lehman Decl. ¶ 17. However, because Abudula had an interview scheduled that was canceled, he is now in the "first priority" category for interview scheduling. *Id.* ¶ 18; Lassen Decl. ¶ 25.

A new interview date has not been scheduled. Goulding Decl. ¶ 7. On August 4, 2025, the parties stipulated to lift the stay and file motions for summary judgment. Dkt. No. 19. Plaintiff now moves for summary judgment, seeking an order requiring USCIS to "expeditiously schedule" an asylum interview because his asylum application has been unreasonably delayed. Pl. MSJ at 11; Plaintiff's Opposition and Reply ("Pl. Reply"), Dkt. No. 24 at 4. Defendants cross-move,

[1] Plaintiff claims the interview was cancelled on June 9, 2025 (Plaintiff's Motion for Summary Judgment, Dkt. No. 20 at 3 ("Pl. MSJ")) and defendants claim they notified Abudula that his interview was cancelled on June 10, 2025. Defendants' Motion for Summary Judgment ("Defs. MSJ"), Dkt. No. 23 at 10.

arguing there has been no unreasonable delay. Defs. MSJ at 12–13; Defendants' Reply ("Defs. Reply"), Dkt. No. 29 at 1.

**LEGAL STANDARD**

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

**DISCUSSION**

**I. USCIS IS ENTITLED TO SUMMARY JUDGMENT ON THE MANDAMUS ACT CLAIM**

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997) (citing *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986)). "Even if the test is met, the district court still retains the discretion to deny relief." *Johnson v. Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003).

Plaintiff seeks relief under the Mandamus Act but defendants argue that Abudula has no right to relief under the Act. Pl. MSJ at 5; Defs. MSJ at 11–12; Defs. Reply at 2–3. Defendants point out that 8 U.S.C. § 1158(d)(7) expressly prohibits a private right of action to enforce the

United States District Court
Northern District of California

timelines set forth in § 1158(d)(5)(A)(ii) and (iii). Defs. Reply at 2. Because the INA does not provide for a private right of action, Abudula's claim is not clear and certain as required, failing the first prong of the test. *Id*.

Courts in this District have consistently held that the INA's prohibition of private rights of action precludes claims for mandamus relief seeking to force adjudication of asylum applications. *Kullab v. United States Dep't of Homeland Sec*., 24-CV-04140-WHO, 2025 WL 901943, at *4 (N.D. Cal. Mar. 25, 2025); *Reyes Briseda v. Lehman*, No. 23-cv-00495-TSH, 2024 WL 2112864, at *3 (N.D. Cal. May 8, 2024) (collecting cases); *Kurt v. Mayorkas*, No. 24 cv 02792 SK, 2024 WL 5161950, at *3 (N.D. Cal. Dec. 18, 2024); *DeCampos v. United States Citizenship and Immigration Services*, No. 23-cv-03434-NC, 2024 WL 671622, at *2 (N.D. Cal. Jan. 18, 2024); *Denisov v. Mayorkas*, No. 23-cv-06442-SI, 2024 WL 3522047, at *4 (N.D. Cal. July 23, 2024); *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1176 (N.D. Cal. 2023). Defendants' motion for summary judgment on the Mandamus Act claim is GRANTED and plaintiff's motion is DENIED.

## II. USCIS IS ENTITLED TO SUMMARY JUDGMENT ON THE ADMINISTRATIVE PROCEDURES ACT CLAIM

Plaintiff and defendants agree that Abudula's Administrative Procedures Act ("APA") claim should be considered under the factors outlined in *Telecommunications Research and Action Center v. F.C.C. ("TRAC")*, 750 F.2d 70 (9th Cir. 1984). Pl. MSJ at 11; Defs. MSJ at 12–13. Under *TRAC*, the reasonableness of an agency's delay is evaluated considering:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

750 F.2d at 80 (citations omitted). The *TRAC* factors weigh in favor of defendants.

### A. Rule of Reason

"[T]he time agencies take to make decisions must be governed by a 'rule of reason.'"



United States District Court
Northern District of California

*TRAC*, 750 F.2d at 80. "The most important TRAC factor is the first factor, the 'rule of reason,' though it, like others, is not itself determinative." *Denisov v. Mayorkas*, No. 23-cv-06442-SI, 2024 WL 3522047, at *5 (N.D. Cal. July 23, 2024) (quoting *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017)). This factor weighs in favor of defendants.

Numerous courts in this District, including this Court, have ruled that USCIS's use of LIFO satisfies the "rule of reason" factor. *See e.g.*, *Kullab*, 2025 WL 901943, at *6; *Denisov*, 2024 WL 3522047, at *5; *Su*, 698 F. Supp. 3d at 1177. "LIFO is 'a sensible administrative response to the problem of increased frivolous, fraudulent, or meritless asylum filings that increase the overall caseload and extend wait periods for all applicants.'" *Varol v. Radel*, 420 F. Supp. 3d 1089, 1097 (S.D. Cal. 2019). Defendants have shown that LIFO was and remains a reasonable response to the substantial backlog and frivolous applications caused by FIFO. *See generally* Lassen Decl.

At some point, delays may become unreasonable and undermine the rule of reason defense. However, delays similar to or longer than Abudula's are not unreasonable. *Kullab*, 2025 WL 901943 at *6 (delay of less than five years not unreasonable); *Denisov*, 2024 WL 3522047, at *6 (delay of three years not unreasonable); *Su*, 698 F. Supp. 3d at 1178 (delay of three years not unreasonable); *see also Denisov*, 2024 WL 3522047, at *6 ("'immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years often not unreasonable.'" (quoting *Yavari v. Pompeo*, 2:19-cv-02524-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).

Abudula argues that although LIFO "potentially" qualifies as a rule of reason, the specifics of his case create "doubt" whether USCIS is following its otherwise reasonable scheduling method. Pl. MSJ at 7. Abudula argues that USCIS's website suggests most interviews are rescheduled within 21 days of cancellation under the LIFO priorities. Pl. MSJ at 7; Goulding Decl. ¶ 6 & Ex. E. Plaintiff's counsel asserts that in his experience rescheduled interviews are "often" rescheduled "no more than a couple of months at most after the initially-scheduled interview date." Pl. Reply at 3. Here, over three months have passed since Abudula's cancelled interview.

United States District Court
Northern District of California

In this case, there is no evidence that Abudula's application is not in the first priority group as the government declarants assert. Lehman Decl. ¶ 18. Abudula acknowledges his position in the first priority group. Pl. MSJ at 7; Pl. Reply at 2. There is no basis to conclude that USCIS is not following its own LIFO priorities or that Abudula is not in the "first priority" category. The only evidence in the record is that the San Francisco Asylum Office currently has 113,000 cases pending. Lehman Decl. ¶ 7. That suggests that the office calendar is full and that rescheduling within a short time period is difficult.

The first *TRAC* factor favors defendants.

**B. Congressional Timetable**

"[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason." *TRAC*, 750 F.2d at 80. Although Congress provided a clear timetable for adjudicating asylum applications, Congress also affords USCIS discretion to deviate from the timeframe in "exceptional circumstances." Under 8 U.S.C. § 1158(d)(5)(A)(ii), "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii) (emphasis added). Likewise, "*in the absence of exceptional circumstances*, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii) (emphasis added). Courts in this District have explained that because Congress included "exceptional circumstances" clauses in the INA, "'the timing requirements are not mandatory' and 'do[] not outweigh the rule of reason which supports the USCIS policies which have caused the challenged delays.'" *Su*, 698 F. Supp. 3d at 1177–78 (quoting *Varol*, 420 F. Supp. 3d at 1097).

Defendants have shown that many factors have contributed to USCIS's delays in scheduling and adjudicating asylum applications. Lassen Decl. ¶¶ 34–63; *Kullab*, 2025 WL 910943, at *7 (finding the USCIS delays have been impacted by the backlog, administrative closures, mandated interviews, funding, and litigation). Abudula does not acknowledge these

"exceptional" circumstances, but concedes that the duty to adjudicate asylum applications under 8 U.S.C. § 1158(d)(5) does not include a "mandated time frame." Pl. Reply at 3. The second factor is neutral.

### C. Human Health and Welfare, and Nature of Interests

Factors three and five are typically considered together, as the parties acknowledge. Pl. MSJ at 10; Defs. MSJ at 18. These factors contemplate, "whether human health and welfare are at stake and the nature and extent of the interests prejudiced by delay." *Yan v. Director of Los Angeles Asylum Office for the United States Citizenship and Immigration Services*, No. 2:22-cv-05846-ODW (MRWx), 2023 WL 4053410, at *5 (C.D. Cal. June 16, 2023) (holding that generalized "fear, despair, preoccupation and uncertainty" do not satisfy these factors). These factors weigh in favor of defendants.

Abudula argues that waiting for his asylum adjudication impacts his health and welfare, "significantly beyond mere economic consideration," particularly because he seeks an opportunity to enlist and serve in the U.S. Navy. Pl. MSJ at 9. Abudula submits evidence from the Santa Clara Navy Recruiting Station, indicating Abudula is an "exceptional candidate" for the Military Intelligence Linguist Position, the Navy Warrior Challenge Program, and for the Navy SEALs. Compl., Ex. 2; Goulding Decl. ¶ 3 & Ex. B. The Navy Warrior Challenge Program has an age requirement of 32 years old, while the Navy SEALs have an age requirement of 28 years old. Compl., Ex. 2. Abudula will turn 28 on October 13, 2026. Compl. ¶ 13(b). The Navy SEAL recruiter indicates that if Abudula attains a green card by the time he enters bootcamp, he will be able to obtain his citizenship during his training. *Id.* at Ex. 2. To do this, the recruiter states USCIS must adjudicate Abudula's asylum application by October 13, 2025, to remain eligible for the Navy SEALs. *Id.*

However, the government highlights that Navy SEAL candidates must be under 28 years old and have U.S. citizenship. Defs. MSJ at 19; Compl. ¶ 13(b). The government argues that because of the statutory requirements to gain U.S. citizenship, Abudula's eligibility as a Navy SEAL is unlikely before he turns 28. Defs. MSJ at 19 (citing 8 C.F.R. § 209.2(a)(1)(ii); 8 U.S.C. § 1427). To be sure, Abudula's desire to serve in the U.S. Navy is admirable and well-supported. But

his reaching the upper age limit to apply to some Navy programs is not a sufficient justification to move his asylum application and adjudication above others in line.

Abudula does not identify any health and welfare risks that he is suffering due to the delay in adjudicating his asylum application beyond his desire to enlist in the U.S. Navy. Abudula currently has an EAD and access to employment opportunities while he awaits his asylum interview and adjudication. Lehman Decl. ¶¶ 20–21. I have previously found that these protections and benefits "ameliorate general harms from a delay in processing asylum applications." *Kullab*, 2024 WL 901943, at *7. The third and fifth *TRAC* factors favor defendants.

**D. Effect of Expediting Action**

Under the fourth *TRAC* factor, "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Given his cancelled interview, Abudula is now in the first priority category. He has been put above other applicants under the LIFO system. Nonetheless, the competing priorities continue to be other asylum applicants in the first priority category, as well as other urgent matters that require USCIS action with a mandatory or expedited time. Lassen Decl. ¶¶ 14–20, 36, 48–52; Lehman Decl. ¶¶ 5–7.

Abudula argues that USCIS already "willing[ly] shuffled" him "into the queue before unceremoniously yanking him back out," and so the government's typical "line-cutting" arguments do not apply here because the cutting has already occurred. Pl. MSJ at 9. Although I acknowledge the frustration the cancellation must have caused, that cancellation resulted in Abudula being placed higher in the queue than the vast majority of other asylum applications. It still holds that within those other applicants in the first priority, compelling adjudication of Abudula's application by court order would "simply advance the adjudication of Plaintiff's application to the detriment of other applications who are waiting in the queue." *Esquivel v. Lehman*, No.3-cv-02930-AGT, 2024 WL 2242441, at *1 (N.D. Cal. Apr. 16, 2024). Abudula must wait his now much earlier turn for an asylum interview and follow the established USCIS scheduling priorities; it would be unjust to compel adjudication, moving his application even



United States District Court
Northern District of California

further up in line.

The fourth *TRAC* factor weighs in favor of defendants.

**E. Impropriety**

The final *TRAC* factor, impropriety, is neutral. "The court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80 (citation omitted). Abudula does not claim impropriety by defendants. Pl. MSJ at 11. The weight of authority in this District finds that where the "[p]laintiff cites no impropriety by Defendants, and the Court has found none," then "this factor is neutral." *Su*, 698 F. Supp. 3d at 1179; *Denisov*, 2024 WL 3522047, at *7 ("[a]lthough the presence of an intentional delay would strongly support [p]laintiff's argument, the opposite is not necessarily true for [d]efendants.").

**CONCLUSION**

I have sympathy for Abudula's circumstances. But the *TRAC* factors either weigh in favor of defendants or are neutral. For the foregoing reasons, I GRANT defendants' motion for summary judgment and DENY plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: October 6, 2025



William H. Orrick
United States District Judge